UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| ORIGINAL DELLS, INC., et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Case No. 8:23-cv-00095-TDC |
| SOUL 1 ENTERTAINMENT | * | |
| GROUP, et al. | * | |
| Defendants | * | |
| | * | |

## REPORT AND RECOMMENDATION

This is a case arising out of alleged violations of the Lanham Act, 15 U.S.C. §§ 1051–1141n, Maryland common law, and Maryland's Truth in Music Advertising Act, Md. Code Ann., Com. Law §§ 11-1501 to -1504 (West 2024). Pending before the Court is Plaintiffs Original Dells, Inc., Michael McGill, and Laverne Allison's Motion for Default Judgment. ECF No. 46. For the reasons discussed below, I recommend that the Motion be granted, in part, and denied, in part, and that Plaintiffs be granted a permanent injunction, awarded statutory damages in the amount of $100,000, and awarded reasonable attorney's fees and costs.

## BACKGROUND

Plaintiffs Michael McGill and Laverne Allison are original and the last surviving members of the R&B group The Dells, ECF No. 1, at 3; ECF No. 46-1, at 2, and Plaintiff Original Dells, Inc. is an Illinois corporation, ECF No. 1, at 3, that is dedicated to "market[ing] and promot[ing] The Dells['] music and history through its website," *id.* at 8. According to Plaintiffs' Complaint, The Dells formed in 1955, *id.* at 5, and "recorded and performed their signature R&B style of music to international acclaim for over six decades," *id.* at 7. During that time, The Dells "released

1

at least 19 albums and 44 singles, including three gold albums, seven gold singles and 25 charted Top 40 hits." *Id.* at 8.  In addition to these achievements, The Dells "have received numerous honors and awards," *id.* at 6, including induction into the Rock and Roll Hall of Fame and the Vocal Group Hall of Fame in 2004, *id.* at 7.

Plaintiffs allege that since at least 1955, Mr. McGill and Mr. Allison "have appeared on sound recordings and performed live under THE DELLS word mark," and since at least 1993, "have appeared on sound recordings and performed live" under the following logo ("The Dells Logo"), *id.* at 8:



*Id.* at 7.  Plaintiffs claim that they own common law rights in and to both THE DELLS mark and The Dells Logo.  *Id.* at 15.  Plaintiffs received a federal trademark registration for The Dells Logo on October 26, 2004.  *Id.* at 7; *see also* ECF No. 1-1, at 2.  At the time they filed their Complaint, Plaintiffs had a pending application for a federal trademark registration for THE DELLS mark, ECF No. 1, at 15, which the U.S. Patent and Trademark Office granted on October 3, 2023, ECF No. 46-1, at 11 n.3.

In late 2019, Plaintiffs allegedly became aware that Soul 1 Entertainment Group ("Soul 1") — an "unincorporated artist booking and management agency located in Flushing, New York," ECF No. 1, at 3 — was using THE DELLS trademark without authorization, *see id.* at 8–9. Specifically, Plaintiffs claim that Soul 1 was managing, "marketing, promoting and advertising a vocal group as 'The Dells Revue' and sometimes as 'The Dells,'" and was "using THE DELLS

mark in their promotional material," including on a website with the domain name "thedellslive.com" and on a Facebook page. *Id.* at 9; *see* ECF No. 46-6, at 2. According to Plaintiffs, The Dells Revue "primarily if not exclusively perform[s]" The Dells' music during their live performances, ECF No. 1, at 11, and has "recorded at least two singles" from these live performances, which are advertised on thedellslive.com as well as on Soul 1's website, where they are also available for purchase, *id.* at 12. Plaintiffs allege that The Dells Revue has "conducted multiple live performances throughout the United States," including in Maryland. *Id.* at 11.

On January 8, 2020, Plaintiffs, through counsel, sent Soul 1 a cease-and-desist letter demanding, among other things, that Soul 1 discontinue The Dells Revue's live performances and any marketing, advertising, or promotions of such; deactivate the website located at thedellslive.com and transfer the domain name to Plaintiffs; deactivate The Dells Revue Facebook page and any other associated social media accounts; and discontinue any unauthorized uses of THE DELLS mark. *See id.* at 9; ECF No. 1-2, at 3–4. Plaintiffs claim that Soul 1 did not respond to the letter. ECF No. 1, at 9. Instead, on June 15, 2021, Greg Hill, President and CEO of Soul 1, and Carol Hamilton, Vice President and CEO of Soul 1, filed an application to register THE DELLS REVUE "as applied to live performances by a musical group," which the U.S. Patent and Trademark Office denied on April 5, 2022, based on a "likelihood of confusion" with The Dells Logo. *Id.* at 14; *see id.* at 3; ECF No. 1-4, at 3. Plaintiffs subsequently sent a second cease-and-desist letter on March 30, 2022, and a third on October 17, 2022; Plaintiffs allege that Soul 1 did not respond to either letter and continued to improperly use THE DELLS mark. *See* ECF No. 1, at 10–11, 14.

On January 12, 2023, Plaintiffs filed a Complaint in this Court against Soul 1, Greg Hill, and Carol Hamilton, as well as the five individual members of The Dells Revue, including James

Burris.[1]  *See* ECF No. 1, at 3–4, 11.  Plaintiffs served process on and returned executed summons for Soul 1, Mr. Hill, Ms. Hamilton, and Mr. Burris.  ECF Nos. 25, 26, 27, 31.  Plaintiffs moved for a Clerk's Entry of Default against Defendants Soul 1, Hill, and Burris on March 9, 2023, ECF No. 28, and the Clerk entered an Order of Default on March 30, 2023, ECF No. 29.  On August 2, 2023, Plaintiffs moved for a Clerk's Entry of Default against Defendant Hamilton, ECF No. 37, and the Clerk entered an Order of Default on September 8, 2023, ECF No. 40.  Ms. Hamilton returned the Notice of Default to the Clerk's Office by mail with a handwritten note stating that she had "nothing to do with this issue" and requesting that the Court "not send [her] anything else regarding this matter."  ECF No. 42, at 1.  On October 13, 2023, due to Plaintiffs' failure to serve the individual members of The Dells Revue aside from Mr. Burris, the Court dismissed without prejudice all claims against the four remaining members of The Dells Revue.  ECF No. 43, at 1.

On April 24, 2024, the Court ordered Plaintiffs to file a Motion for Default Judgment or show cause why such motion would be inappropriate.  ECF No. 45, at 1.  Ms. Hamilton again returned this Order to the Clerk's Office by mail with a handwritten note stating that she had "nothing to do with this matter."  ECF No. 48, at 1.  On May 8, 2024, Plaintiffs filed a Motion for Default Judgment against Defendants Soul 1, Hill, Hamilton, and Burris.  ECF No. 46.  None of the defendants have entered an appearance, answered Plaintiffs' Complaint, or — aside from Ms. Hamilton's correspondence — taken any other action in this case.

On May 9, 2024, the case was assigned to my Chambers for the limited purpose of a Report and Recommendation on this pending Motion for Default Judgment.  ECF No. 47.

## STANDARD OF REVIEW

---

[1] Plaintiffs also named GP Promotions and its President and CEO, Calvin Pinkney, as defendants. ECF No. 1, at 4.  On May 17, 2023, the Court dismissed with prejudice all claims against GP Promotions and Calvin Pinkney per the parties' consent motion.  *See* ECF Nos. 33, 34.

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which the Clerk of the Court may enter "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear.  Fed. R. Civ. P. 55(b)(1).  The entry of default judgment is a matter within the discretion of the Court.  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)).  Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party,'" *id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421); *see also Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896–97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages.  Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g.*, *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972 at *2–3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832 at *2–3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011).   "[W]here a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded" and, consistent with the Court's discretion regarding the entry of default judgment, relief based on those allegations should be denied.  *E.g.*, *Russell*, 2012 WL 1190972, at *3 (second alteration in original) (quoting *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544).

## ANALYSIS

### I.      Jurisdiction and Venue

As a threshold matter, to enter a default judgment pursuant to Federal Rule of Civil Procedure 55(b), the court must have jurisdiction and the venue must be proper.  *See, e.g.*, *Wells Fargo Bank, N.A. v. Gateway Int'l Logistics, Inc.*, No. 1:22-cv-02487-JRR, 2023 WL 2473255, at *3 (D. Md. Mar. 13, 2023).  The Court has subject matter jurisdiction over Plaintiffs' claims under the Lanham Act, a federal law, pursuant to 28 U.S.C. § 1331.  Additionally, because Plaintiffs' federal and state law claims arise out of a "common nucleus of operative fact" — namely, Defendants' allegedly unauthorized use of their trademarks — the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  *E.g.*, *Daisey v. Weiss*, No. DKC 13-3332, 2014 WL 3778697, at *1 (D. Md. July 29, 2014) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

6

Although the Fourth Circuit has not determined whether a district court must examine personal jurisdiction before entering a default judgment, "it has held that 'any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void.'" *Aerotek, Inc. v. Bernard Irby Inc.*, 670 F. Supp. 3d 230, 232 (D. Md. 2023) (quoting *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *3 (D. Md. Sept. 13, 2019)). Therefore, it is "prudent" for a court, prior to entering a default judgment, to assess whether it can exercise personal jurisdiction over the defendant. *Id.* (quoting *Gonzalez*, 2019 WL 4392951, at *3). When a court examines the existence of personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* at 233 (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)).

To exercise personal jurisdiction over a nonresident defendant, the court "must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements." *Gonzalez*, 2019 WL 4392951, at *3 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Maryland courts "have interpreted the Maryland long-arm statute to reach as far as the Constitution allows"; thus, "the statutory and due process components of the personal jurisdiction analysis merge."[2] *Davis v. Horton*, No. PJM-23-0078, 2024 WL 839045, at *6 (D. Md. Feb. 27, 2024)

---

[2] Nonetheless, some courts in the Fourth Circuit have indicated that analysis under Maryland's long-arm statute is still relevant, particularly in cases that "present factual scenarios outside the scope of the long-arm statute." *Diamond v. Experian Info. Sols., Inc.*, No. TDC-23-3508, 2024 WL 3495795, at *3 (D. Md. July 22, 2024); *see also, e.g.*, *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 677 (D. Md. 2010) ("[T]o the extent that a defendant's activities are covered by the

(citing *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002)).  A court's exercise of personal jurisdiction comports with due process "if the defendant has 'certain minimum contacts' with the forum state, 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may have either general or specific personal jurisdiction over a defendant.  *See, e.g.*, *Perry v. Nat'l Ass'n of Home Builders of U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *3 (D. Md. Sept. 28, 2020).  General jurisdiction exists where a nonresident defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."  *Id.* (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).  With respect to a business entity, general jurisdiction typically exists "where the business has its 'nerve center,'" which "is where the business's officers 'direct, control and coordinate [the business's] activities.'"  *E.g.*, *Guldenzoph v. Indigo Rd. Hosp. Grp.*, No. 2:23-cv-05339-DCN, 2024 WL 2848462, at *10 (D.S.C. June 4, 2024) (alteration in original) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010)).  Specific jurisdiction exists where a defendant has "'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'"  *Perry*, 2020 WL 5759766, at *3 (alteration in original) (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d

statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." (quoting *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006))).  Maryland's long-arm statute provides that a court may exercise personal jurisdiction "over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) (West 2024).  "Transacting business" under Maryland's long-arm statute "requires 'actions [that] culminate in purposeful activity within the State.'"  *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014) (alteration in original) (quoting *Bahn v. Chi. Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993)).  As discussed below, Plaintiffs have made a prima facie showing that Defendants, by arranging and conducting live musical performances at venues in Maryland, have transacted business in Maryland, thus bringing their conduct within the scope of Maryland's long-arm statute.

185, 189 (4th Cir. 2016)).  To exercise specific jurisdiction over a defendant, a court must find that: "(1) the defendant . . . ha[s] 'purposefully availed' itself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims . . . arise out of or relate to those activities directed at the forum state; [and] (3) the exercise of jurisdiction [is] 'constitutionally reasonable.'" *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 334 (D. Md. 2022) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)).

Plaintiffs allege that while none of the defendants are residents of Maryland,[3] the Court can exercise specific jurisdiction over each of them based on their purposeful activities within the state.  *See* ECF No. 1, at 5.  To satisfy the first prong of the specific jurisdiction test, "the defendant must have 'purposefully directed [its] activities at residents of the forum.'"  *Bradley*, 617 F. Supp. 3d at 334–35 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Although "this prong is not susceptible to a mechanical application," the Fourth Circuit has identified a non-exhaustive list of factors for courts to consider, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Id.* at 335 (quoting *UMG Recordings*, 963 F.3d at 352).  Additionally, courts should "consider 'the *quality* and *nature* of the defendant's connections' to the forum state, 'not merely the number of

---

[3] Plaintiffs allege that Soul 1 is located in Flushing, New York, and that Mr. Hill and Ms. Hamilton are residents of Flushing, New York.  ECF No. 1, at 3.  Plaintiffs allege that Mr. Burris "is a resident of either New York or New Jersey."  *Id.*

contacts between the defendant and the forum state.'" *Diamond v. Experian Info. Sols., Inc.*, No. TDC-23-3508, 2024 WL 3495795, at *4 (D. Md. July 22, 2024) (quoting *UMG Recordings*, 963 F.3d at 352).

Plaintiffs have made a prima facie showing that Defendants' contacts with Maryland constitute purposeful availment.  Specifically, Plaintiffs allege that Defendants have deliberately engaged in business activities in Maryland by conducting at least seven live performances in the state over the course of at least four years.  *See* ECF No. 1, at 12; ECF No. 46-3, at 3; ECF No. 46-10, at 1–6.  Additionally, Defendants advertised these performances on thedellslive.com and The Dells Revue Facebook page.  *See* ECF No. 46-3, at 3.  Plaintiffs also allege that Defendants have recorded two singles from The Dells Revue's live performances, which are available for purchase on Soul 1's website.  ECF No. 1, at 12.  Other courts have found similar activities sufficient to constitute purposeful availment.  *See, e.g.*, *McBride v. Sacks*, No. 3:24-CV-00212-FDW-SCR, 2024 WL 3448467, at *5 (W.D.N.C. July 17, 2024) (finding that defendants purposefully availed themselves of the forum state by arranging and organizing musical performances within the state); *Scott v. White*, 539 F. Supp. 3d 831, 841 (M.D. Tenn. 2021) (finding purposeful availment where, among other things, defendant had traveled to the forum state for musical performances and "music-related business . . . on at least five or six occasions over the last several years" and made her music available for download in the forum state); *Wise v. Williams*, No. 1-10-CV-02094, 2011 WL 2446303, at *5 (M.D. Pa. May 18, 2011) (finding purposeful availment where defendants had advertised allegedly infringing song in the forum state, performed the song in the forum state at two concerts within the past year, and marketed and distributed the song in the forum state).

Plaintiffs have also made the requisite prima facie showing on the second and third prongs of the test for specific jurisdiction.  With respect to the second prong, Plaintiffs' lawsuit must have "a sufficient nexus to [Defendants'] forum-based activity," *Bradley*, 617 F. Supp. 3d at 336, such that "the suit *either* 'arises out of' *or* 'relates to' [Defendants'] contacts with the forum," *id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).  Plaintiffs have brought the present lawsuit based on Defendants' allegedly unauthorized use of Plaintiffs' trademarks in connection with, among other things, their live musical performances — including those in Maryland.  *See* ECF No. 1, at 8, 12, 18.  Thus, there is a sufficient nexus between Plaintiffs' lawsuit and Defendants' activity in Maryland.  *See, e.g.*, *Wise*, 2011 WL 2446303, at *2, *5 (finding sufficient nexus where plaintiffs filed lawsuit alleging copyright infringement, and defendants had performed, marketed, and distributed the allegedly infringing song in the forum state and throughout the United States).  Regarding the third prong, in determining whether the exercise of personal jurisdiction is constitutionally reasonable, courts "must consider the 'burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief.'"  *Bradley*, 617 F. Supp. 3d at 345 (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (per curiam)).  Defendants bear "the burden to 'present a compelling case' that jurisdiction is unreasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 477).  The Court finds, in light of the fact that Defendants have traveled to Maryland several times over the past few years, that the burden on Defendants of defending a lawsuit in this District would not be severe.  Moreover, any burden is "diminish[ed]" by "modern developments in communication technology, such as the ability to conduct remote hearings."  *Id.*  Additionally, Plaintiffs bring claims under Maryland law, and Maryland has an interest in vindicating violations of its laws.  Finally, given that Defendants have not ceased their allegedly infringing activities, *see* ECF No.

46-1, at 12, Plaintiffs clearly have an interest in obtaining relief.  Therefore, the exercise of personal jurisdiction over Defendants is constitutionally reasonable.

Finally, venue is proper in this judicial district.  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Lupo v. JPMorgan Chase Bank, N.A.*, No. DKC 14-0475, 2015 WL 410273, at *4 (D. Md. Jan. 26, 2015) (quoting 28 U.S.C. § 1391(b)(2)).  "In trademark infringement actions under the Lanham Act, appellate courts have held that a 'substantial part' of the events giving rise to such claims occurs in any district where consumers are likely to be confused by the accused infringement, 'whether that occurs in one district or in many.'"  *Savvy Rest, Inc. v. Sleeping Organic, LLC*, No. 3:18CV00030, 2019 WL 1435838, at *8 (W.D. Va. Mar. 29, 2019) (quoting *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)).  Plaintiffs allege that Defendants held a live musical performance — which they advertised and promoted on thedellslive.com and The Dells Revue Facebook page — in Waldorf, Maryland, in December 2022.  *See* ECF No. 1, at 12.  Since Waldorf, Maryland, is within the Southern Division of the District of Maryland, and Plaintiffs claim that Defendants' activities are likely to confuse "the consuming public as to the affiliation, connection or association of Defendants" with The Dells, *id.* at 17, venue is proper in this district, *see, e.g.*, *Earth Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, No. 23-20884-CIV, 2023 WL 11883729, at *8 (S.D. Fla. Aug. 17, 2023) (concluding that venue was proper in one of the many judicial districts where defendants had promoted, advertised, and held concerts).

## II.     Claims

Plaintiffs bring five causes of action: (I) trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (II) infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. § 1114; (III) violation of Maryland's

Truth in Music Advertising Act, Md. Code Ann., Com. Law § 11-1501 to -1504; (IV) trademark infringement, false advertising, and unfair competition under Maryland common law; and (V) cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).  *See* ECF No. 1, at 14–18.  The Court addresses each claim below.

### A.  Counts I, II, and IV: Trademark Infringement, False Designation of Origin, and Unfair Competition

To state a claim for federal trademark infringement, a plaintiff must show:

> (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

*Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 594 (D. Md. 2013) (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012)).  Courts in the Fourth Circuit apply this same test to evaluate claims for false designation of origin or unfair competition under the Lanham Act.  *See id.* (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)).  This test also applies to claims for trademark infringement and unfair competition under Maryland law.  *See El Pollo Rico, LLC v. Wings & Pollo, LLC*, No. PWG 21-cv-2346, 2022 WL 2916168, at *2 (D. Md. July 25, 2022) (citing *Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 659 (D. Md. 2013)).

Under the four-part test set forth above, Plaintiffs have successfully stated claims for trademark infringement, false designation of origin, and unfair competition under the Lanham Act and Maryland common law.[4]  First, Plaintiffs have established that they own two valid marks: The

---

[4] Plaintiffs also purport to bring a cause of action for "false advertising . . . under Maryland common law."  ECF No. 1, at 2; *see also id.* at 19.  However, Maryland does not recognize a common law claim for false advertising, and Plaintiffs do not make any arguments regarding or

Dells Logo and THE DELLS word mark.  "Federal registration is *prima facie* evidence that a mark is valid," *Living Legends Awards for Serv. to Human., Inc. v. Hum. Symphony Found., Inc.*, No. PX 16-3094, 2017 WL 3868586, at *3 (D. Md. Sept. 5, 2017) (citing *Entrepreneur Media*, 958 F. Supp. 2d at 594), and Plaintiffs obtained a federal trademark registration for The Dells Logo on October 26, 2004, ECF No. 1, at 7; *see also* ECF No. 1-1, at 2.  According to Plaintiffs, The Dells Logo is incontestable under 15 U.S.C. § 1065, thus "constituting 'conclusive evidence' of Plaintiff[s'] 'exclusive right' to use the mark in United States commerce."  ECF No. 46-1, at 11 (quoting 15 U.S.C. § 1115(b)).  Plaintiffs also obtained a federal trademark registration for THE DELLS word mark, but not until October 3, 2023, ECF No. 46-1, at 11 n.3 — after they filed the present lawsuit.  However, "an unregistered trademark is a valid trademark in common law, and is enforceable under the Lanham Act and state common law."  *JK Moving & Storage, Inc. v. J&K Moving LLC*, No. 1:17cv0849, 2017 WL 4800737, at *4 (E.D. Va. Oct. 4, 2017) (citing *Matal v. Tam*, 582 U.S. 218, 225 (2017)).  To "claim an exclusive right to an unregistered trademark, [a] plaintiff must establish priority by showing that its use was the first actual use of the mark in a genuine commercial transaction."  *Id.* (citing *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003)).  Here, Plaintiffs McGill and Allison allege that they have used THE DELLS word mark in interstate commerce since at least 1955, and that their rights in the mark are "superior to any rights Defendants may claim."  ECF No. 1, at 15.  As Defendants, by failing to answer Plaintiffs' Complaint or otherwise respond, have not contested priority, Plaintiffs have established their ownership and the validity of THE DELLS word mark.  *See JK Moving &*

---

cite any cases in support of their claim for false advertising as a matter of Maryland common law. *See* ECF No. 46-1, at 9–14 (stating that the test for "trademark infringement and unfair competition . . . under Maryland law" is the same "as under the Lanham Act," *id.* at 10, and proceeding to analyze claims under same test).  Therefore, the Court will treat Count IV of Plaintiffs' Complaint as a claim for trademark infringement and unfair competition under Maryland common law.

*Storage*, 2017 WL 4800737, at *4 (concluding plaintiff had demonstrated validity of unregistered mark where plaintiff had been using the mark for more than thirty-five years and defendant did not contest priority).

Plaintiffs have also satisfied the second and third prongs of the test. Specifically, Plaintiffs allege that Defendants have adopted marks that "fully incorporate the term 'DELLS,'" ECF No. 1, at 15, which they use to market The Dells Revue's live performances and sound recordings, *see id.* at 16. Plaintiffs also claim that Defendants never obtained permission "to use THE DELLS mark in any form in connection with their musical recordings or performances," *id.* at 8, and that they sent Defendants three cease-and-desist letters, *see id.* at 9–10, 14, demonstrating that Defendants' use of the mark was unauthorized, *see Living Legends Awards*, 2017 WL 3868586, at *3 ("Plaintiff alleges that it demanded Defendants stop using the mark, so Defendants' use of the protected mark was unauthorized." (internal citation omitted)). Further, Plaintiffs allege that Defendants use THE DELLS mark in the domain name for their website, thedellslive.com, as well as on the Facebook page for The Dells Revue. *See id.* at 9, 11; *see, e.g.*, *Entrepreneur Media*, 958 F. Supp. 2d at 594–95 (finding that plaintiff, who had obtained federal trademark registration for "ENTREPRENEUR" and seven related marks, had satisfied second and third prongs where plaintiff alleged that corporate defendants used the mark "ENTREPRENEURS EDGE" in the course of business, had incorporated it into the domain name for their website, and used it on their Facebook page).

Finally, Plaintiffs have shown that Defendants' use of THE DELLS mark is likely to confuse consumers. To evaluate the likelihood of confusion, courts in the Fourth Circuit generally apply a nine-factor test that considers:

> (1) the strength or distinctiveness of the plaintiff's mark as actually
> used in the marketplace; (2) the similarity of the two marks to

> consumers; (3) the similarity of the goods or services that the marks
> identify; (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders; (6) the
> defendant's intent; (7) actual confusion; (8) the quality of the
> defendant's product; and (9) the sophistication of the consuming
> public.

*Id.* at 595 (citing *Rosetta Stone*, 676 F.3d at 153).  Courts do not always weigh these factors equally, "and not all factors are relevant in every case." *Id.* (quoting *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007)).

The allegations in Plaintiffs' Complaint satisfy at least six of the likelihood-of-confusion factors.  With respect to the first factor, "[g]enerally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 334 (D. Md. 2017).  Plaintiffs allege that they have been using THE DELLS mark for nearly seventy years, that the mark has "acquired special significance as the name of a distinct musical group," ECF No. 1, at 8, and that THE DELLS word mark and The Dells Logo "have earned widespread recognition and success in the . . . pop and R&B music market of the United States," *id.* at 15; *see, e.g.*, *Entrepreneur Media*, 958 F. Supp. 2d at 595 (finding first factor weighed in favor of plaintiff where plaintiff had been using mark for over thirty years and federal district courts had recognized the mark as "valid, strong, and distinct").

Second, "[c]ourts are particularly inclined to find similarity when there is overlap in the marks' dominant terms." *JFJ Toys*, 237 F. Supp. 3d at 336.  Here, Defendants have "fully incorporate[d] the term 'DELLS,'" the dominant portion of Plaintiffs' marks, into their mark, "The Dells Revue."  ECF No. 1, at 15; *see Entrepreneur Media*, 958 F. Supp. 2d at 595 ("Such total incorporation supports the similarity of the two marks.").

As for the third factor, there must be "some degree of overlap" between the goods or services offered.  *JFJ Toys*, 237 F. Supp. 3d at 338.  While the goods or services "need not be

identical," *id.* (citing *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009)), both Plaintiffs and Defendants in this case use their marks in connection with musical performances and sound recordings, *see* ECF No. 1, at 15–16.

With respect to the fourth factor, the "relevant inquiry . . . is whether the goods are sold to the same class of consumers in the same context," and the likelihood of confusion increases if "both goods are sold in the same channels of trade." *JFJ Toys*, 237 F. Supp. 3d at 338. Plaintiffs allege that they and Defendants market their goods and services in the same channel of trade — namely, "the R&B music market of the United States." ECF No. 1, at 16.

Plaintiffs' allegations also support the sixth factor, intentionality, which "can be powerful evidence cutting in favor of Plaintiff[s]." *JFJ Toys*, 237 F. Supp. 3d at 339. Specifically, Plaintiffs allege that despite sending three cease-and-desist letters to Defendants, Defendants continued their infringing activities, and even attempted to obtain a federal trademark registration for "The Dells Revue" after Plaintiffs sent the first letter. *See* ECF No. 1, at 9–10, 14; *JFJ Toys*, 237 F. Supp. 3d at 339 (finding that sixth factor weighed in favor of plaintiffs where defendants continued infringing activity after receiving two cease-and-desist letters).

Finally, with respect to the seventh factor, Plaintiffs have provided evidence of actual confusion. Although Plaintiffs allege that they have never sanctioned Defendants' activities, *see* ECF No. 1, at 8, an article published on northjersey.com states that the members of The Dells Revue are "the sanctioned representatives" of The Dells, ECF No. 1-6, at 4; *see* ECF No. 1, at 16.

Given that at least six of the nine factors for evaluating likelihood of confusion weigh in favor of Plaintiffs, and particularly in light of the evidence of actual confusion, the Court is satisfied that Plaintiffs have stated a claim for federal trademark infringement. *See, e.g.*, *Living Legends Awards*, 2017 WL 3868586, at *4 (finding that plaintiff satisfied fourth prong based solely

on evidence of actual confusion); *Entrepreneur Media*, 958 F. Supp. 2d at 595 (concluding that plaintiff established likelihood of confusion where plaintiff provided allegations supporting four of the nine factors).

Since, as discussed above, the same test applies to claims for false designation of origin and unfair competition under the Lanham Act and to analogous claims under Maryland common law, the Court concludes that Plaintiffs have sufficiently stated their claims on these counts as well. Therefore, I recommend entering default judgment against Defendants on Counts I, II, and IV of Plaintiffs' Complaint.

## B.  Count III: Maryland's Truth in Music Advertising Act

Under Maryland's Truth in Music Advertising Act, "a person may not advertise or conduct a live musical performance or production in the State through the use of a false, deceptive, or misleading affiliation, connection, or association between a performing group and a recording group," Md. Code Ann., Com. Law § 11-1502(a), unless one of five enumerated exceptions applies, *id.* § 11-1502(b).  The Act authorizes Maryland's Attorney General, if they believe that a person has violated or will violate the Act, to seek an injunction, restitution, and civil penalties. *See id.* § 11-1503.  Plaintiffs do not cite any decisions interpreting the statute, as the Act has yet to be interpreted by this or any other court.

Although Plaintiffs claim that Defendants have violated the Truth in Music Advertising Act and that Plaintiffs have been harmed as a result, *see* ECF No. 1, at 16, 18, a plaintiff can bring a private cause of action for an alleged violation of a Maryland statute only "if such a right was created by the legislature, either expressly or by implication," *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 554 (D. Md. 2021) (citing *Baker v. Montgomery County*, 50 A.3d 1112, 1122 (Md. 2012)).  The Truth in Music Advertising Act does not contain an express private remedy; thus, the

Court must determine whether the Act does so by implication. In making this determination under Maryland law, courts apply a three-part test that asks whether: (1) the plaintiff is "one of the class for whose special benefit the statute was enacted"; (2) there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Id.* (quoting *Baker*, 50 A.3d at 1122).

With respect to the first factor, "[i]f a statute's language provides a right to a particular class of persons, there is a strong inference that the legislature intended the statute to carry an implied cause of action." *Baker*, 50 A.3d at 1123. Thus, courts "distinguish[] between those statutes designed to confer a general benefit on the public at large and those designed to protect a particular subgroup of the public or to preserve or create individual rights." *Clark*, 561 F. Supp. 3d at 554–55 (quoting *IVTX, Inc. v. United Healthcare of the Mid-Atl., Inc.*, 112 F. Supp. 2d 445, 447 (D. Md. 2000)). In making this distinction, courts assess whether the statute "is framed as a 'general prohibition or a command' . . . or confers a generalized benefit," *Baker*, 50 A.3d at 1123 (quoting *Univs. Rsch. Ass'n v. Coutu*, 450 U.S. 754, 772 (1981)), or "confer[s] a right on a class of persons," *id.* (citing, as examples, "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof," "no person shall be denied the right to vote," and "[e]mployees shall have the right to organize and bargain collectively" (omission and second alteration in original) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–91 n.13 (1979))). Here, the language of the Truth in Music Advertising Act "is framed as a prohibitive command," *id.*, and "does not 'unmistakably focus' on a particular class of persons who benefit from it," *id.* at 1124 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)). Therefore, this first factor weighs against finding an implied private right of action.

Second, silence in the legislative record regarding intent to provide a private right of action "ordinarily . . . weigh[s] strongly against implying one." *Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 580 (D. Md. 2001) (citing *Sugarloaf Citizens Ass'n v. Gudis*, 554 A.2d 434, 437–38 (Md. Ct. Spec. App. 1989)).  There is no indication in the legislative history of the Truth in Music Advertising Act that the legislature intended to create a private right of action.  On the contrary, the primary author of the legislation testified that "[t]he Attorney General would be authorized to seek an injunction against performances by . . . groups passing themselves off as the real groups, and to seek restitution and civil penalties."  Hearing on S.B. 711 Before the S. Fin. Comm., 2008 Leg., 425th Sess. (Md. 2008) (testimony of Sen. Mike Lenett).  Accordingly, the second factor also weighs against finding an implied right of action in the Truth in Music Advertising Act.

Third, the Court must consider whether a private right of action is consistent with the underlying purposes of the legislative scheme.  The purpose of the Truth in Music Advertising Act, according to a summary of the legislation, was to strengthen existing penalties for false advertising in cases where a person uses a misleading connection to an existing musical group to advertise or conduct a live performance.  *See* Summary of Senate Bill 711 — Truth in Music Advertising Act, 2008 Leg., 425th Sess. (Md. 2008).  Maryland's false advertising law does not expressly provide a private right of action, *see* Md. Code Ann., Com. Law § 11-705 (West 2024), and no court has found that the law creates a private right of action by implication, *cf. Lay v. Caesars Enter. Servs., LLC*, No. CCB-18-96, 2018 WL 1947050, at *5 (D. Md. Apr. 25, 2018) ("[I]t appears that this section may be enforced only by the state Attorney General.").  Further, the Truth in Music Advertising Act appears to have strengthened only the enforcement authority of the Attorney General.  Specifically, the Act authorizes the Attorney General to take immediate action against violations, whereas Maryland's false advertising law requires that the Attorney General first issue

notice before taking action, and violations of the Act are subject to higher civil penalties than are violations of the false advertising law. *See* Summary of Senate Bill 711, *supra*; *see also* Md. Code Ann., Com. Law § 11-705. Thus, because a private right of action is inconsistent with the underlying purposes of the legislative scheme, the third factor weighs against finding an implied private right of action in the Truth in Music Advertising Act.

For the foregoing reasons, I conclude that the Truth in Music Advertising Act does not provide a private right of action and therefore recommend denying Plaintiffs' Motion for Default Judgment as to Count III of their Complaint.

### C.  Count V: Cybersquatting

Cybersquatting "refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (quoting S. Rep. No. 106-140, at 4 (1999)). To state a claim for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), a plaintiff must show that: (1) "the defendant had a bad faith intent to profit from using the plaintiff's mark"; and (2) "the defendant registered, trafficked, or used a domain name that is either confusingly similar [to] or dilutive of the plaintiff's mark." *Under Armour, Inc. v. Exclusive Innovations, Inc.*, No. SAG-20-03427, 2021 WL 2042320, at *5 (D. Md. May 21, 2021) (citing *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011)).

The ACPA provides the following non-exhaustive list of factors for a court to consider in determining whether a defendant's acts demonstrate bad faith intent to profit:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the good will represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of [the Act].

*Id.* (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX)).   While the "first four factors suggest circumstances tending to indicate an absence of bad faith intent to profit," the next four factors "tend to indicate that such bad faith does exist."   *NextHome, Inc. v. Jenkins*, No. 1:20-cv-01210-CCB, 2021 WL 1345484, at *5 (D. Md. Apr. 12, 2021) (quoting *Gioconda L. Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 432 (S.D.N.Y. 2013)), *report and recommendation adopted*, No. CCB-20-

22

1210, 2021 WL 6118983 (D. Md. May 4, 2021).  The last factor can suggest either the absence or existence of bad faith, "depending on the degree of distinctiveness and fame of the mark."  *Id.* (quoting *Gioconda L. Grp.*, 941 F. Supp. 2d at 432).  However, "courts are not limited" to these factors and need not consider every factor, *id.*; instead, courts in the Fourth Circuit examine "the totality of the circumstances in making the bad faith determination," *id.* (quoting *Newport News Holdings Corp.*, 650 F.3d at 435).

Based on Plaintiffs' allegations, the Court concludes that Defendants had a bad faith intent to profit from use of Plaintiffs' marks.  As Plaintiffs concede, "there may arguably be evidence of [the] third factor," ECF No. 46-1, at 15, since Defendants used the domain name to promote and market The Dells Revue's live performances and sound recordings, *see* ECF No. 1, at 12; *Under Armour*, 2021 WL 2042320, at *5 (finding evidence of the third factor where defendant used the domain name at issue to "sell its supplements and apparel").  However, there is no evidence of the first, second, or fourth factor — the remaining three factors suggesting an absence of bad faith.  Of the next four factors, which tend to indicate the existence of bad faith, Plaintiffs' allegations provide support for the fifth factor.  Specifically, Plaintiffs claim that by incorporating "The Dells" into their domain name, Defendants "intended to . . . divert[] users to [their website] and creat[e] confusion" as to whether Plaintiffs are affiliated with or have endorsed Defendants.  ECF No. 46-1, at 15–16.  This conduct "falls into the 'ACPA's heartland.'"  *NextHome*, 2021 WL 1345484, at *6 (quoting *Applause Prod. Grp., LLC v. Showtime Events Inc.*, No. GJH-16-1463, 2017 WL 1906588, at *6 (D. Md. May 4, 2017)).  Plaintiffs do not make any allegations regarding the sixth, seventh, or eighth factors.  However, Plaintiffs claim that the ninth factor tends to indicate the existence of bad faith in this case, given that Plaintiffs' marks "are famous and distinct as evidenced by The Dells['] induction into both the Rock and Roll Hall of Fame and the Vocal Group Hall of

23

Fame." ECF No. 46-1, at 16. Additionally, as discussed above, Plaintiffs have been performing under THE DELLS mark for nearly seventy years, and the mark has "acquired special significance" in connection with their musical group. ECF No. 1, at 8. Thus, taken together, these factors suggest that Defendants acted in bad faith by using Plaintiffs' marks. *See, e.g.*, *Under Armour*, 2021 WL 2042320, at *5–6 (concluding that defendant acted in bad faith where there was evidence of third and fifth factors, and ninth factor "strongly suggest[ed]" bad faith, given fame and distinctiveness of plaintiff's marks); *NextHome*, 2021 WL 1345484, at *6 (concluding, although some factors suggested an absence of bad faith, that defendants, "by incorporating [plaintiff's] Trademark and similarly confusing phrases into [their] domain names, . . . possessed a bad faith intent to profit by diverting customers from [plaintiff's] website . . . to the [d]efendants' own website, where those consumers would purchase the [d]efendants' services over [plaintiff's]").

Plaintiffs have also satisfied the second element of their cybersquatting claim. Plaintiffs allege that Defendants "registered and used the <thedellslive.com> domain name," ECF No. 46-1, at 16, which, as discussed above, fully incorporates the dominant portion of Plaintiffs' marks, *see* ECF No. 1, at 10, 15. Therefore, the Court finds that Defendants' domain name is confusingly similar to Plaintiffs' marks, and that Plaintiffs have sufficiently stated a claim for cybersquatting. *See, e.g.*, *Under Armour*, 2021 WL 2042320, at *6 (finding that defendant's domain name, "https://lifesarmour.com," was "confusingly similar" to plaintiff's "UNDER ARMOUR" mark and "other ARMOUR-formative trademarks").

Because Plaintiffs have satisfied both elements of their claim for cybersquatting, I recommend entering default judgment against Defendants on Count V of Plaintiffs' Complaint.

**III.    Relief**

As relief, Plaintiffs seek a permanent injunction, statutory damages under the ACPA and Truth in Music Advertising Act, and attorney's fees and costs.  *See* ECF No. 46-1, at 17, 19–20, 22.

## A.  Permanent Injunction

Plaintiffs request that the Court enjoin Defendants from using "THE DELLS REVUE and DELLS marks or any other marks, logos, designs, designations, or indicators that are confusingly similar to THE DELLS mark and The Dells Logo in any manner whatsoever"; from "registering or seeking to register any domain name or trademark incorporating the term 'DELLS'"; from "representing by any means whatsoever, directly or indirectly," that Defendants or their products, services, or activities have any affiliation with or endorsement from Plaintiffs; and from "assisting, aiding or abetting any other person or business entity in engaging in or performing" any of the foregoing activities.  ECF No. 1, at 21–22.

A district court has authority to grant permanent injunctive relief under the Lanham Act and in default judgment actions asserting trademark infringement.  *See El Pollo Rico*, 2022 WL 2916168, at *2 (citing *Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC 2009-0111, 2009 WL 3348231, at *2 (D. Md. Oct. 15, 2009); *Entrepreneur Media*, 958 F. Supp. 2d at 596).  "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."  *Id.* (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  Under this test, the plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (quoting *eBay*, 547 U.S. at 391).

With respect to the first factor, the "Fourth Circuit has held that irreparable injury regularly follows from trademark infringement." *Entrepreneur Media*, 958 F. Supp. 2d at 596 (citing *Lone Star Steakhouse*, 43 F.3d at 939). Since, as discussed above, I find that Plaintiffs have stated a claim for trademark infringement, this factor weighs in favor of granting a permanent injunction. *See, e.g.*, *El Pollo Rico*, 2022 WL 2916168, at *2 (noting that a plaintiff seeking an injunction under the Lanham Act is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" (quoting 15 U.S.C. § 1116(a))).

As to the second factor, courts assess whether the defendant is likely to continue the infringing activity in the absence of a permanent injunction. *See, e.g.*, *id.* at *3. In conducting this assessment, courts have found that remedies other than an injunction were inadequate where the defendant continued the infringing activity after receiving a cease-and-desist letter and failed to participate in the litigation. *See, e.g.*, *Living Legends Awards*, 2017 WL 3868586, at *6 ("Where, as here, a defendant continues to infringe upon a mark after a plaintiff issues a cease-and-desist letter, and defendant does not enter its appearance or otherwise participate in the litigation, 'further infringement is a continuing threat, making remedies at law insufficient to compensate for Plaintiff['s] injuries.'" (alteration in original) (quoting *Innovative Value Corp.*, 2009 WL 3348231, at *3)); *Entrepreneur Media*, 958 F. Supp. 2d at 596 (finding that defendants' "utter lack of response signal[ed] a threat of continued infringement"). Additionally, courts have held that monetary damages are inadequate to redress injuries to a plaintiff's reputation and goodwill, as "[d]amages to reputation and goodwill are not items that are easily measured by a legal calculation of damages." *Toolchex, Inc. v. Trainor*, No. 3:08-CV-236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009); *see also Innovative Value Corp.*, 2009 WL 3348231, at *3 (explaining that injury to reputation and goodwill "may fairly be characterized as 'irreparable' in nature"). Here, Plaintiffs

26

allege that Defendants have continued their infringing uses of Plaintiffs' marks even after receiving three cease-and-desist letters, *see* ECF No. 1, at 9–10, 14, and Defendants have not entered an appearance in or otherwise responded to the present lawsuit.  Plaintiffs also claim that Defendants' infringing activities have harmed their goodwill and reputation.  *See id.* at 16.  Therefore, the second factor weighs in favor of granting a permanent injunction.

On the third factor, courts have found that a defendant's violation of the law tips the balance of hardships in favor of the plaintiff.  *See, e.g.*, *El Pollo Rico*, 2022 WL 2916168, at *3 (concluding that balance of hardships tipped in favor of plaintiffs because defendants had "no right" to infringe on their marks (quoting *FleetPride, Inc. v. Fleet Care Tire & Truck Serv., LLC*, No. 4:10-2288-RBH-SVH, 2011 WL 442051, at *4 (D.S.C. Jan. 19, 2011))); *Entrepreneur Media*, 958 F. Supp. 2d at 596 (finding that balance of hardships tipped in plaintiff's favor where defendants were "operating their business in direct violation of the Lanham Act").  As discussed above, Plaintiffs have shown that Defendants are violating federal and state law through their challenged activities. Therefore, the balance of hardships tips in favor of Plaintiffs, and the third factor supports granting a permanent injunction.

With respect to the fourth and final factor, this Court has held that "there is greater public benefit in securing the integrity of [a] [plaintiff's] mark than in allowing [a] [d]efendant to continue to use the mark in violation of [that] [plaintiff's] rights."  *Entrepreneur Media*, 958 F. Supp. 2d at 596 (first, third, and fifth alterations in original) (quoting *Innovative Value Corp.*, 2009 WL 3348231, at *3).  Relatedly, courts in the Fourth Circuit have held that "it is in the public interest to prevent confusion."  *El Pollo Rico*, 2022 WL 2916168, at *3 (citing *Toolchex*, 2009 WL 2244486, at *3).  Thus, for the reasons discussed above, and because Plaintiffs have shown that

Defendants' infringing use of their marks has caused actual confusion, the public interest would not be disserved by a permanent injunction.

Since all four factors weigh in favor of granting a permanent injunction, I recommend that the Court grant Plaintiffs' requested injunction.

### B. Damages

Plaintiffs seek statutory damages under both the ACPA and Maryland's Truth in Music Advertising Act. Since I find that the Truth in Music Advertising Act does not provide a private right of action, I will address Plaintiffs' request for damages under only the ACPA.

Under the ACPA, a plaintiff "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." *Newport News Holdings Corp.*, 650 F.3d at 441 (quoting 15 U.S.C. § 1117(d)). The Fourth Circuit has held that since statutory damages under the ACPA serve not only to compensate the plaintiff's losses but also "'as a sanction to deter wrongful conduct,' a district court may properly weigh the seriousness of the conduct in determining the amount of the award." *Id.* at 442 (internal citation omitted) (quoting *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009)). Courts have "wide discretion" in determining the amount of statutory damages to award and generally consider several factors, "including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a serial cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1101 (D. Colo. 2014) (omission in original) (first quoting *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012); and

then quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012)). However, the "defendant's intent and behavior are the foremost consideration." *Id.* at 1102.

Plaintiffs seek $100,000, the maximum amount of statutory damages a court may award under the ACPA. *See* ECF No. 46-1, at 21. Although there is not a set test for determining the amount of statutory damages to award, courts generally "reserve the high-end of the $1,000 to $100,000 range for the most egregious offenders." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, No. 4:08cv19, 2009 WL 10689694, at *5 (E.D. Va. July 24, 2009) (quoting *Int'l Bancorp, LLC v. Societe Des Bains De Mer*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002)), *aff'd*, 650 F.3d 423. Considering the factors set forth above, Plaintiffs have sufficiently alleged that Defendants' conduct was willful. Specifically, after Plaintiffs sent their first cease-and-desist letter, in which they requested, among other things, that Defendants deactivate the website located at thedellslive.com and transfer the domain name to Plaintiffs, Defendants continued to use the domain name to promote and advertise The Dells Revue's performances. *See* ECF No. 1, at 9–10; ECF No. 1-2, at 2; *Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). Additionally, as discussed above, Defendants have failed to respond to Plaintiffs' Complaint and Motion for Default Judgment or otherwise participate in the present legal proceedings. Further, Defendants operated the infringing domain name for at least four and a half years, *see Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1356, 1359 (S.D. Fla. 2008) (noting the "duration of the infringement," *id.* at 1359, as a factor supporting award of maximum statutory damages where defendant had been operating infringing domain name for more than six years), and "incorporate[d] the entirety" of Plaintiffs' mark in the domain name, *CrossFit*, 69 F. Supp. 3d at 1102. Finally, and significantly, the infringing domain name is not

"thedellsrevuelive.com" but rather "thedellslive.com." *Cf. Under Armour*, 2021 WL 2042320, at *7 (noting that in many of the cases plaintiff cited where the court awarded maximum statutory damages, the defendants had "explicitly held [themselves] out" as an affiliate of the plaintiffs). For these reasons, I find that the maximum award of statutory damages is appropriate and just and recommend awarding Plaintiffs $100,000 for Defendants' violation of the ACPA.

### C. Attorney's Fees

Finally, Plaintiffs seek reasonable attorney's fees and costs. The Lanham Act authorizes courts "in exceptional cases" to "award reasonable attorney fees to the prevailing party" and provides that a plaintiff who establishes a violation of the Act may recover the costs of the action. 15 U.S.C. § 1117(a). The Fourth Circuit has held that a case is "exceptional," thereby warranting attorney's fees under the Lanham Act, when, "in light of the totality of the circumstances":

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable, (2) the non-prevailing party has litigated the case in an unreasonable manner, or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Living Legends Awards*, 2017 WL 3868586, at *7 (quoting *Ga.-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015)).

Plaintiffs have sufficiently alleged that this is an exceptional case justifying the award of attorney's fees. Defendants have disregarded this litigation, and this Court has held that such disregard "presents a wide discrepancy on the merits of the parties' respective positions, is an unreasonable manner of litigating, and is 'the type of conduct' that courts should 'seek to deter by means of awarding' fees under the Act." *AAMCO Transmissions, LLC v. Up to Parr, LLC*, No. 22-3212-PJM, 2023 WL 5510081, at *3 (D. Md. Aug. 25, 2023) (quoting Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees at 4, *AAMCO Transmissions*, No. 22-3212-PJM,

ECF No. 27).  The willfulness of Defendants' conduct, as described above, further supports an award of attorney's fees.  *See, e.g.*, *Chanel, Inc. v. Banks*, No. WDQ-09-843, 2011 WL 121700, at *14 (D. Md. Jan. 13, 2011) (noting the "willfulness of defendant's violations of the Lanham Act" in awarding attorney's fees).  Therefore, I recommend that Plaintiffs be awarded reasonable attorney's fees as well as their costs of bringing this action.  However, since Plaintiffs have not provided the specific amount of attorney's fees and costs they seek or any documentation that would enable the Court to assess a reasonable award, I recommend that Plaintiffs be granted leave to file a motion for attorney's fees and costs and supporting documentation within twenty-one days of the entry of judgment.

## CONCLUSION

For the foregoing reasons, it is recommended that Plaintiffs' Motion for Default Judgment be granted as to Counts I, II, IV, and V of their Complaint and denied as to Count III.  It is further recommended that Plaintiffs be granted a permanent injunction, as well as $100,000 in statutory damages and reasonable attorney's fees and costs.  Finally, it is recommended that Plaintiffs be granted leave to file a motion for attorney's fees and costs and supporting documentation within twenty-one (21) days of the entry of judgment.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

Date:  September 5, 2024                                          _____/s/_____

                                                                                 Ajmel A. Qureshi
                                                                                 U.S. Magistrate Judge